COMMONWEALTH of Pennsylvania,
Appellant

v.

Oneximo MENDEZ, Appellee.

Superior Court of Pennsylvania.

Argued May 22, 2013.
Filed Aug. 6, 2013.

---

Andrew J. Gonzalez, Assistant District Attorney, Lancaster, for Commonwealth, appellant.

William G. Braught, Lancaster, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, J., and PLATT, J.*

* Retired Senior Judge assigned to the Superior Court.

OPINION BY PLATT, J.

The Commonwealth appeals from the trial court's order of August 14, 2012, prohibiting the Commonwealth from providing a narrative report regarding expert testimony to Appellee, Oneximo Mendez. After careful review, we vacate the order and remand with instructions.

The trial court set forth the facts of the case as follows:

[Appellee] is charged with numerous offenses related to his alleged sexual relationship with a minor. The complaining witness, Y.S., [born June 21, 1993,] claims that from late 2004 until 2011 [Appellee] repeatedly engaged her in acts of sexual misconduct. These allegations include seven years of sexual abuse beginning when Y.S. was 12 years old. In July 2011, shortly after her 18th birthday, Y.S. gave birth to a baby. DNA testing identified [Appellee] as the child's probable biological father. Prior to the birth, Y.S. was not aware that she was pregnant because she experienced episodes of "spotting" that she mistook for her menstrual period.

... [O]n May 21, 2012, th[e trial c]ourt met with counsel to discuss discovery, scheduling and other issues which needed to be addressed before trial. Following this conference, [the court] issued an Order scheduling trial to begin on September 10, 2012 and directing that "[a]ll discovery [is] to be completed by the Commonwealth by Friday, June 8, 2012. There shall be no further discovery from the Commonwealth without cause shown."

On August 6, 2012, a month before trial and nearly two months after th[e trial c]ourt's deadline, the Commonwealth submitted a Request to Provide Discovery. The Request stated that,

upon further review of the case, the Commonwealth believed it would be necessary to present expert testimony to explain how Y.S. could have given birth without ever knowing that she was pregnant. As a result, the Commonwealth sought to provide defense counsel with a narrative report prepared by Detective Jimmy Mummau of the Lancaster City Police containing notes of an interview with Dr. Philip Bayliss. The goal of the interview was to obtain Dr. Bayliss' opinion on the reasons a woman may not be aware that she is pregnant until she gives birth. The Commonwealth also wished to provide a copy of Dr. Bayliss' curriculum vitae.

\* \* \*

On August 14, 2012, oral argument was held in this matter, and later that same day th[e trial c]ourt issued an Order stating: "It is hereby ordered that [the Commonwealth's] Request is denied. Nothing in this Order precludes the Commonwealth from introducing the expert testimony subject to this Request should the alleged victim's 'unknown pregnancy' be the subject of any cross-examination or any testimony or evidence introduced by [Appellee]."

On August 28, 2012, the Commonwealth filed a Notice of Appeal to the Superior Court accompanied by a certification stating that the [c]ourt's Order would "terminate or substantially handicap the prosecution of the case" pursuant to the Pennsylvania Rules of Appellate Procedure. On September 14, 2012, the Commonwealth filed a Statement of [Errors] Complained of on Appeal, and on October 1, 2012, [Appellee] filed a Response. The Commonwealth's sole claim is that th[e trial c]ourt erred in denying the Request to Provide Discovery, thereby precluding the Commonwealth from presenting expert testimo-

ny. The Commonwealth has followed all appropriate procedures and is entitled to an interlocutory appeal of th[e trial c]ourt's Order pursuant to Pa.R.A.P. 311(d).

(Trial Court Opinion, 11/02/12, at 1–3). The trial court entered its 1925(a) opinion on November 2, 2012.

The Commonwealth raises three questions for our review:

A. Whether the trial court committed an abuse of discretion by denying the Commonwealth's Request to Provide Discovery regarding critical medical expert testimony in a sexual assault case, more than thirty days before trial, thereby precluding the Commonwealth from presenting critical evidence at trial?

B. Whether the trial court committed an abuse of discretion by denying the Commonwealth's Request to Provide Discovery, thereby preventing the Commonwealth from performing its duty to provide mandatory Discovery under Rule 573 of the Rules of Criminal Procedure?

C. Whether the trial court committed an abuse of discretion by denying the Commonwealth's Request to Provide Discovery, after the Commonwealth had shown cause why the Discovery should be provided?

(Commonwealth's Brief, at 4).

█ Preliminarily, we note that the Commonwealth has waived its second and third questions on appeal. "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "Issues not included in the [Rule 1925(b) ] Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Johnson*, 51 A.3d

237, 246–47 (Pa.Super.2012) (*en banc*), appeal denied, —— Pa. ——, 63 A.3d 1245 (2013) (waiving issues not specifically raised in Rule 1925(b) statement). Here, the Commonwealth's Rule 1925(b) statement only raises its first issue: "Whether the [t]rial [c]ourt committed an abuse of discretion by denying the Commonwealth's request to provide as Discovery a report regarding expert medical testimony, in a sexual assault case, more than thirty days before trial, thereby precluding the Commonwealth from presenting relevant and critical expert testimony." (Rule 1925(b) Statement, 9/14/12, at unnumbered page 2). Furthermore, a review of the Commonwealth's second and third issues shows that they overlap the first issue raised, and present no independent basis for review of the trial court's decision. Accordingly, the Commonwealth has preserved only its first issue, and its second and third issues are waived. *See Johnson, supra* at 246–47.

In its first issue, the Commonwealth argues that the trial court erred or abused its discretion when it "denied the Commonwealth's Request to Provide Discovery regarding the Commonwealth's medical expert witness in a child sex case[.]" (Commonwealth's Brief, at 8). We agree.

 Our standard of review is well-settled: "Generally, on review of an order granting or denying a discovery request, an appellate court applies an abuse of discretion standard. Likewise, evidentiary rulings are subject to an abuse of discretion standard." *Commonwealth v. Boich,* 982 A.2d 102, 109 (Pa.Super.2009) (*en banc*), *appeal denied,* 607 Pa. 689, 3 A.3d 669 (2010) (citations omitted).

The standard of review for a trial court's evidentiary rulings is narrow.

The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Hanford,* 937 A.2d 1094, 1098 (Pa.Super.2007), appeal denied, 598 Pa. 763, 956 A.2d 432 (2008) (citations and quotation marks omitted).[1]

First, we address the ongoing mischaracterization of the nature of the order from which the parties appeal. Here, the trial court and the parties purport that the August 14, 2012 order denies the Commonwealth's request to provide discovery to Appellee in the form of expert testimony and reports. (*See* Trial Ct. Op., 11/02/12, at 1; *see also* Commonwealth's Brief, at 5; Appellee's Brief, at 5). However, Pennsylvania Rule of Criminal Procedure 573 provides, in relevant part:

**(B) Disclosure by the Commonwealth.**

**(1) Mandatory.** In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case[including] any results or reports of scientific tests, expert opinions ... that are within the possession or control of the attorney for the Commonwealth[.]

\*　　\*　　\*

---

1. Here, the Commonwealth concedes that it "makes no claim that the trial court's ruling arose from bias, prejudice, ill-will or partiality." (Commonwealth's Brief, at 9 n.2).

Thus, it only challenges the court's ruling as "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable." *Hanford, supra* at 1098.

**(D) Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(B)(1)(e), (D), (E). Furthermore,

In *Brady* [*v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ], the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87 [83 S.Ct. 1194]. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), and that the duty encompasses impeachment evidence as well as directly exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985).

*Commonwealth v. Burke*, 566 Pa. 402, 781 A.2d 1136, 1141 (2001).

■ In the instant case, the trial court attempted to sanction the Commonwealth for an apparent violation of discovery deadlines by prohibiting it from providing a report concerning an expert witness's opinion to Appellee.[2] Thus, the order attempts to sanction the Commonwealth for violating discovery deadlines, for which the court "may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances." Pa.R.Crim.P. 573(E). However, the Commonwealth has a duty to disclose the specific information at issue to Appellee, regardless of whether Appellee requested it, and even if it is not direct evidence. *See Burke, supra* at 1141.

■ Yet here, the trial court's order does not prevent the Commonwealth from introducing the report; in fact, it permits the Commonwealth to introduce its expert witness on rebuttal. (*See* Order, 8/14/12, at 1 ("Nothing in this Order precludes the Commonwealth from introducing the expert testimony subject to this Request

---

**2.** We also note that the form of the evidence offered by the Commonwealth, "a narrative report prepared by Detective Jimmy Mummau . . . containing notes of an interview with Dr. Philip Bayliss [and] a copy of Dr. Bayliss' curriculum vitae," (Trial Ct. Op., 11/02/12, at 2), is not an expert report of the type contemplated under our discovery rules. *See* Pa. R.Crim.P. 573(B)(2)(b) ("If an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the **expert** prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.") (emphasis added).

should the alleged victim's 'unknown pregnancy' be the subject of any cross-examination or any testimony or evidence introduced by [Appellee]."")). Illogically, however, the order prevents the Commonwealth from sharing the narrative report of the expert's conclusions with Appellee. (*See id.*). Thus, the court's order creates a paradox in which the Commonwealth is sanctioned for violating a discovery order by being allowed to enter evidence on rebuttal that the Appellee will not have seen before trial. Accordingly, we must conclude that the remedy is not "just under the circumstances" and the trial court abused its discretion in fashioning the order. *See* Pa.R.Crim.P. 573(E); *Hanford, supra* at 1098.

█ Furthermore, the trial court committed an error of law by attempting to sanction the Commonwealth in contravention of Rule 573. Although the court may sanction a party for violating discovery deadlines, the method chosen here by the trial court, attempting to prevent the Commonwealth from providing the report to Appellant, prevents the Commonwealth from fulfilling its continuing, mandatory duty to disclose "reports of . . . expert opinions" under Rule 573. *See Burke, supra* at 1141.

Finally, there is merit to the Commonwealth's claim that "the trial court committed a misapplication or an overriding of [d]iscovery law[.]" (Commonwealth's Brief, at 8).

█ It is well-settled that "[t]he purpose of expert testimony is to assist in grasping complex issues not within the ordinary knowledge, intelligence and experience of the jury. Moreover, the admission of this testimony is a matter for the discretion of the trial court and should not be disturbed unless there is a clear abuse of discretion." *Commonwealth v. Zook,*

532 Pa. 79, 615 A.2d 1, 11 (1992) (citations omitted); *see also Hanford, supra* at 1098.

█ Here, the Commonwealth argues that its medical expert would provide "critical testimony regarding the victim's credibility[.]" (Commonwealth's Brief, at 8). In general, "expert testimony cannot be used to bolster the credibility of a witness. Whether the expert's opinion is offered to attack or to enhance, it assumes the same impact—an unwarranted appearance of authority in the subject of credibility which is within the facility of the ordinary juror to assess." *Commonwealth v. Constant,* 925 A.2d 810, 822 (Pa.Super.2007), *appeal denied,* 594 Pa. 675, 932 A.2d 1285 (2007) (citations and quotation marks omitted). However,

> [T]estimony regarding conduct or behavior of victims of sexual assaults . . . is appropriate for expert testimony because the physical condition of a sexual assault victim is not a matter that is typically within the knowledge of average jurors. . . . [E]xpert testimony [does] not encroach upon the jury's province of determining witness credibility since the testimony pertain[s] to objective medical facts, rather than explanations of behavioral patterns.

*Commonwealth v. Minerd,* 562 Pa. 46, 753 A.2d 225, 228–29 (2000) (citations omitted); *see also Commonwealth v. Johnson,* 456 Pa.Super. 251, 690 A.2d 274 (1997) (discussing same). Here, the Commonwealth purports to proffer expert testimony to explain "how a young woman can be pregnant and not be aware she is pregnant." (Commonwealth's Brief, at 10). Therefore, because the medical expert would not be testifying about her "conduct or behavior" but instead discuss "the physical condition of a sexual assault victim," *Minerd, supra* at 228–29, the evidence would be both relevant and admissible, and therefore the trial court abused its discretion in foreclos-

ing its admission at this juncture, when the testimony would address "complex issues not within the ordinary knowledge, intelligence and experience of the jury." *Zook, supra* at 11.

The Commonwealth also argues that the testimony was required to explain "the victim's failure to make prompt report[.]" (Commonwealth's Brief, at 8).

> Our legislature has addressed the need for a victim of an attack to provide prompt reporting as follows:
>
> > Prompt reporting to public authority is not required in a prosecution under this chapter: Provided, however, [t]hat nothing in this section shall be construed to prohibit a defendant from introducing evidence of the complainant's failure to promptly report the crime if such evidence would be admissible pursuant to the rules of evidence.
>
> 18 Pa.C.S.A. § 3105.

*Commonwealth v. Thomas,* 904 A.2d 964, 969–70 (Pa.Super.2006).

> Section 3105 codified a common law principle recognizing that the victim of a sexual assault naturally would be expected to complain of the assault at the first safe opportunity. Generally, there are three principles upon which evidence addressing the timeliness of a sexual assault complaint has been deemed relevant and admissible: (1) as an explanation of an inconsistency/silence; (2) as corroboration of similar statements; or (3) as a *res gestae* declaration.
>
> \* \* \*
>
> [B]oth the common law experience and the judgment of the General Assembly have led to a recognition of the relevance of the promptness of a complaint of sexual abuse, and this Court has separately recognized the reality that a sexual assault prosecution often-

times depends predominately on the victim's credibility, which is obviously affected by any delay in reporting the abuse. Revealing the circumstances surrounding an incident of sexual abuse, and the reasons for the delay, enables the factfinder to more accurately assess the victim's credibility. Moreover, this Court has acknowledged that juries in sexual assault cases expect to hear certain kinds of evidence and, without any reference to such evidence during the trial, a jury is likely to unfairly penalize the Commonwealth, the party with the burden of proof.

> \* \* \*
>
> .... [C]onsigning [prompt reporting] evidence to rebuttal, as the trial court did, is not the appropriate solution in a case where a child-victim waited years to report abuse after it occurred, for the defense may not trigger its admission as rebuttal and, thereby, block the Commonwealth from addressing the jurors' likely negative inference arising from the particularly long reporting delay[.]

*Commonwealth v. Dillon,* 592 Pa. 351, 925 A.2d 131, 137–41 (2007) (citations omitted); *see also Thomas, supra* at 970 (discussing availability of prompt complaint jury instructions).

Here, the Commonwealth contends that "the question of why and how [the victim] did not know she was pregnant would arise in the minds of jurors during [its] case in chief" and that, if Appellee does not attempt to impeach her credibility, the jury would be foreclosed from hearing relevant medical expert testimony. (Commonwealth's Brief, at 12). We agree, and conclude that our case law is well-settled that the Commonwealth may introduce evidence to explain a victim's failure to promptly report a complaint of sexual abuse in its case in chief. *See, e.g., Dillon, supra* at 137–41; *Minerd, supra* at 228–29;

*Thomas, supra* at 970. Therefore, the trial court abused its discretion in limiting the use of the Commonwealth's expert testimony to rebuttal evidence. *See Hanford, supra* at 1098. Accordingly, for all the foregoing reasons, we instruct the Commonwealth to prepare an expert report in conformance with Pa.R.Crim.P. 573(B)(2)(b), and we vacate the trial court's order and remand for trial in accordance with this opinion.

Order vacated with instructions. Jurisdiction relinquished.